IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RALPH S. JANVEY, RECEIVER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:15-CV-3171-N |
| | § | |
| DAVID NANES, | § | |
| | § | |
| Defendant. | § | |

**<u>ORDER</u>**

This Order addresses Plaintiff Ralph S. Janvey's (the "Receiver") motion for summary judgment and for injunctive relief [14]. The Court grants the motion.

**I. STANFORD, WEALTH MANAGEMENT SERVICES, LTD., NANES, AND THE RECEIVER**

This action is one of many arising out of the ongoing Securities and Exchange Commission fraud action against R. Allen Stanford, his associates, and various entities under Stanford's control (collectively, "Stanford"). As part of that ongoing action, this Court appointed the Receiver and authorized him to "immediately take and have complete and exclusive control, possession, and custody of the Receivership Estate and to any assets traceable to assets owned by the Receivership Estate." Second Am. Order Appointing Receiver, July 19, 2010 [1130], *in SEC v. Stanford Int'l Bank, Ltd.*, Civil Action No. 3:09-CV-0298-N (N.D. Tex. filed Feb. 17, 2009). As part of his duties, the Receiver was charged to "[i]nstitute such actions or proceedings to impose a constructive trust, obtain possession,

and/or recover judgment with respect to persons or entities who received assets or records traceable to the Receivership Estate." *Id.*

The Receiver brought actions against Nanes individually[1] and his company, Wealth Management Services, Ltd. ("WMSL"). After initially defending the lawsuits, counsel for Nanes and WMSL withdrew and the defendants became unresponsive. The Court rendered summary judgment for the Receiver regarding his claims against WMSL, including pre- and post-judgment interest and attorney's fees and costs. *See* Final J. [88], *in Janvey v. Wealth Mgmt. Servs., Ltd.*, Civil Action No. 3:10-CV-477-N (N.D. Tex. filed Mar. 8, 2010). The Court severed the claims against Nanes into this action. Nanes, at the time evading law enforcement authorities in Central America, was difficult to serve. After Nanes was found living under a fake name on a resort island off the coast of Belize, Belizean authorities arrested him. The Receiver served Nanes with the complaint in this action and with requests for admissions. Nanes subsequently skipped bail without responding to the Receiver's discovery requests and has not appeared, literally or legally, since. The Receiver seeks to hold Nanes liable as an alter ego for the judgment against WMSL and to avoid certain transfers from Stanford to Nanes. The Receiver also seeks an injunction prohibiting Nanes from disposing of assets that could satisfy these judgments.

---

[1]The Receiver's Amended Complaint [3] against Nanes also involves various other claims. However, the Receiver nonsuits his claims not addressed in this Order. Receiver's Br. in Supp. of Mot. for Summ. J. 2 n.1 [15].

ORDER – PAGE 2

## II. THE SUMMARY JUDGMENT LEGAL STANDARD

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, "he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Indeed, factual controversies are resolved in favor of the nonmoving party "'only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts.'" *Olabisiomotosho v. City of Hous.*, 185 F.3d 521,

525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

### III. THE COURT GRANTS THE RECEIVER'S MOTION FOR SUMMARY JUDGMENT

Based on the undisputed evidence, the Receiver is entitled to judgment as a matter of law on his claims. Where, as here, a party fails to respond to requests for admissions, the requests are deemed admitted, and deemed admissions can provide a sufficient factual basis to establish the essential elements of the movant's claim. *See Finlay v. Wolpoff & Abramson*, 2009 WL 936882 (N.D. Tex. 2009) (citing *In re Carney*, 258 F.3d 415, 420 (5th Cir. 2001)). Nanes did not respond to the Receiver's motion and thus does not dispute the Receiver's factual assertions, whether those assertions flow from deemed admissions or other evidentiary sources. *See Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988) (holding, upon nonmovant's failure to respond to a motion for summary judgment, that the district court properly "accepted as undisputed the facts so listed"). The Receiver is entitled to judgment as a matter of law, having established all of the essential elements of his claims.

#### A. *Nanes Is Liable as WMSL's Alter Ego*

Nanes can be held liable for the judgment against WMSL because Nanes was WMSL's alter ego. When exercising pendent jurisdiction over state law claims in the context of a federal receivership, the Court applies the choice of law rules of the forum in which it sits; in this case, Texas. *See Janvey v. Brown*, 767 F.3d 430, 434 n.10 (5th Cir. 2014). Under Texas choice of law rules, the law of an entity's state of incorporation controls whether that entity's owner can be held responsible for the entity's liability. TEX. BUS. ORGS. CODE

§ 1.104; *Alberto v. Diversified Grp., Inc.*, 55 F.3d 201, 204 (5th Cir. 1995) (applying predecessor statute). WMSL is incorporated in Delaware, so the Court looks to Delaware's substantive law.

Under Delaware law, a plaintiff may pierce the corporate veil and establish alter ego liability by "demonstrat[ing] a misuse of the corporate form or an overall element of injustice or unfairness." *Alberto*, 55 F.3d at 205 (internal quotations and citations omitted). A plaintiff can demonstrate misuse of the corporate form by showing that "those in control of a corporation did not treat the corporation as a distinct entity." *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 176–77 (2d Cir. 2008) (applying Delaware law) (quotation marks, citation, and alterations omitted). If the owners failed to treat the corporation as a distinct entity, the Court looks at the specific circumstances for indications of injustice or unfairness. *Id.* Examples of such circumstances include: whether the corporation was adequately capitalized; whether the corporation was solvent; whether it paid dividends, kept records, observed corporate formalities, or had functioning officers and directors; and whether the corporation was simply a facade for the shareholder. *Id.* (citations omitted). No factor is dispositive or necessary, but the Court must be convinced that it would be inequitable to uphold the legal distinction between corporation and shareholder. *Id.* (citations omitted).

Here, the facts conclusively establish that it would be inequitable to uphold the distinction between WMSL and Nanes. Nanes admits: (1) that WMSL was undercapitalized and did not follow any corporate formalities; (2) that Nanes transferred corporate funds to

himself for personal use without following any corporate formality or procedure; and (3) that WMSL received payments from Stanford entities for services that Nanes performed personally, rather than through WMSL. App. in Supp. of Mot. for Summ. J. 10–13 [16]. Based on these facts, which show that Nanes did not observe any real distinction between WMSL and himself, it would be inequitable to uphold the legal distinction between WMSL and Nanes at the expense of Stanford's victims. As WMSL's alter ego, Nanes is liable for the judgment previously entered against WMSL. *See* Final J. [88], *in Janvey v. Wealth Mgmt. Servs., Ltd.*, Civil Action No. 3:10-CV-477-N (N.D. Tex. filed Mar. 8, 2010).

### B. Nanes Is Liable Under TUFTA

The Receiver has established all of the essential elements of his TUFTA claim and is entitled to judgment as a matter of law. TUFTA allows the Receiver to avoid transfers and obtain judgment against a transferee for the amount of any transfer made with "actual intent to hinder, delay, or defraud any creditor of the debtor." TEX. BUS. & COM. CODE §§ 24.005(a), 24.008(a). Thus, there are two elements the Receiver must prove: (1) a transfer, and (2) that the transfer was made with fraudulent intent. Upon proving those elements, the Receiver is entitled to judgment for the value of the transfer unless Nanes asserts and establishes an affirmative defense. Nanes has asserted no such defense here. Thus, for the reasons described below, the Receiver has established the necessary elements of his claim by showing (1) transfers from Stanford to Nanes, and (2) fraudulent intent. Accordingly, the Receiver is entitled to judgment on his TUFTA claim for the amount of the transfers.

The Receiver has established that Stanford transferred $1,626,422 to Nanes. In addition to the deemed admissions, App. in Supp. of Mot. for Summ. J. 13–14, the Receiver submits a declaration by Karyl Van Tassel, a forensic accountant whose testimony the Court has relied on repeatedly in Stanford proceedings. *See* App. in Supp. of Mot. for Summ. J. 200, 389, 396. Van Tassel's Declaration is competent summary judgment evidence of the proceeds that Nanes received from Stanford. *See Janvey v. Alguire*, 647 F.3d 585, 597 (5th Cir. 2011). Nanes does not challenge the validity of Van Tassel's calculations. Accordingly, the Court concludes that Nanes received from Stanford transfers under TUFTA in the amount of $1,626,422.

The Receiver has also established that the transfers from Stanford to Nanes were made with actual intent to defraud Stanford's investors. Proof "that [a transferor] operated as a Ponzi scheme establishes fraudulent intent behind the transfers it made." *Alguire*, 647 F.3d at 598. Based on the deemed admissions and expert testimony, the Court concludes the Receiver has shown that Stanford operated a Ponzi scheme. App. in Supp. of Mot. for Summ. J. 10–14, 200–07. Nanes has not contested that Stanford operated as a Ponzi scheme. Because the Receiver has carried his burden in showing that Stanford operated as a Ponzi scheme, the Court finds that the transfers from Stanford to Nanes were made with fraudulent intent under TUFTA. Thus, the Receiver is entitled to recover $1,626,422 from Nanes for voidable fraudulent transfers.

### IV. THE COURT GRANTS AN INJUNCTION AGAINST NANES

The Receiver is entitled to an injunction prohibiting Nanes from improperly transferring assets. Under TUFTA, a creditor may obtain an injunction against a transferee's further disposition of property. TEX. BUS. & COM. CODE § 24.008(a)(3). Whether to grant a TUFTA injunction is determined under principles of equity and, in this case, the Federal Rules of Civil Procedure. *Id.* To obtain a permanent injunction, the Receiver "must establish (1) success on the merits; (2) that a failure to grant the injunction will result in irreparable injury; (3) that said injury outweighs any damage that the injunction will cause the opposing party; and (4) that the injunction will not disserve the public interest." *VRC LLC v. City of Dallas*, 460 F.3d 607, 611 (5th Cir. 2006). The Receiver carries this burden.

The Receiver succeeded on the merits of his claim because, as discussed above, he is entitled to summary judgment on his TUFTA claims against Nanes, and on his claim that Nanes is personally liable for the Receiver's TUFTA judgment against WMSL.

The Receiver also shows that failure to grant an injunction will result in irreparable injury. The injury that will occur absent an injunction is asset dissipation that would render the Receiver's judgment unrecoverable. *See Alguire*, 647 F.3d at 600–01 (discussing preliminary injunction). Nanes, as an international fugitive, has evaded law enforcement authorities in multiple countries and has consistently been an unresponsive litigant. Based on Nanes's conduct, the Receiver has established that Nanes will transfer or otherwise dispose of assets that could satisfy the Receiver's judgments. Moreover, the Receiver lacks

any other effective remedy: without seizable assets, the judgment is unrecoverable and the Court's ability to remedy the Receiver's injury is impaired.

The injury the Receiver would suffer without an injunction outweighs any damage the injunction would cause Nanes. The injury to the Receiver – inability to recover assets to which the judgment entitles him – outweighs any harm to Nanes, who would remain in possession of his property except to the extent necessary to prevent him from fraudulently transferring it. *See id.* at 601. Finally, the public interest is served by preventing Nanes from avoiding paying the judgment at the expense of the Stanford receivership, which exists for the benefit of the investors defrauded by Stanford's Ponzi scheme.

## V. ATTORNEY'S FEES IN NANES ACTION

The Receiver seeks $502,719.60 in attorney's fees and $48,193.55 in costs and expenses related to his TUFTA claim against Nanes. Under TUFTA, "the court may award costs and reasonable attorney's fees as are equitable and just" in a fraudulent transfer dispute. TEX. BUS. & COM. CODE § 24.013. "This provision of TUFTA gives the trial court the sound discretion to award attorney's fees based on the evidence[.]" *Walker v. Anderson*, 232 S.W.3d 899, 919 (Tex. App. – Dallas 2007, no pet.). The Court's exercise of this discretion is subject to the following limitations: any fees awarded must be reasonable and necessary, and must also be equitable and just. *Qui Phuoc Ho v. MacArthur Ranch, LLC*, 2015 WL 5093273, at *10 (Tex. App. – Dallas 2015, pet. denied) (unpublished) (citing and applying to TUFTA *Bocquet v. Herring*, 972 S.W.2d 19, 20–21 (Tex. 1998) (interpreting substantially identical language in Texas Uniform Declaratory Judgment Act)).

The Receiver's brief does not provide any argument about whether his fee and cost requests comport with the appropriate legal standard. The factual basis underlying his requests consists of a declaration and partial billing records. The declaration states that the fees relate to work such as: " prior and ongoing efforts to locate Nanes and his assets, such as through issuance of numerous subpoenas and information requests"; "researching, preparing, and serving" the motion to sever and amended complaint; "researching, preparing, and serving" the Requests for Admissions; acquiring documents; and preparing two other motions. The Court is not yet convinced that the amount requested – over half a million dollars – bears a reasonable relationship to the work described in this uncontested case and thus the Court denies the request. However, given the policies underlying the Court's previous decisions on fee awards in this receivership, the Court denies the request without prejudice. The Receiver may move for his attorney's fees and costs under Rule 54(d).

## CONCLUSION

The Court grants the Receiver's motion for summary judgment. The Court grants the Receiver's request for an injunction under TUFTA and orders that Nanes, his agents, and those acting in concert with Nanes are enjoined from transferring, concealing, or disposing of any fraudulently transferred property, proceeds of such property, or any other property from which this Court's judgment might be satisfied.

Signed October 5, 2016.

_____
David C. Godbey
United States District Judge

ORDER – PAGE 11